**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HAKIM ABDULLAH,

Plaintiff,

v. Case No. 3:04-cv-667-J-32TEM

CITY OF JACKSONVILLE, et al.,

Defendants.

---

**ORDER**[1]

This case is before the Court on Defendants, Sergeant Clarence Rodgers, Officer Isaac Brown and the City of Jacksonville's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 61), Plaintiff's Motion for Oral Argument Before the Court (Doc. 67), Defendants' Motion for Sanctions (Doc. 69), Defendants' Motion for Summary Judgment (Doc. 75), Defendants' Motion to Strike the Testimony of Theresa Hayward and Robert Towns (Doc. 77), Defendants' Motion to Strike Theresa Hayward's Affidavit Submitted in Opposition to Defendants' Motion for Summary Judgment and to Bar any Further Testimony of Theresa Hayward (Doc. 81), Defendants' Motion to Strike the Affidavit of Robert Towns Submitted in Opposition to Defendants' Motion for Summary Judgment and to Bar any Further Testimony of

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

Robert Towns (Doc. 83) and Defendants' Motion to Extend Time to File Motion for Involuntary Dismissal with Prejudice (Doc. 92). *Pro se* plaintiff, Hakim Abdullah ("plaintiff"), responded in opposition to defendants' motions. (Docs. 73, 79, 80, 85, 86 and 94). After filing an opposition to defendants' motion for summary judgment (Doc. 79), Plaintiff submitted a supplemental memorandum further opposing the motion (Doc. 87), to which defendants filed an opposition (Doc. 90).

## I. BACKGROUND

Pro se Plaintiff, Hakim Abdullah's ("plaintiff")[2], operative complaint is the Amended Complaint (Doc. 51)[3], which asserts two causes of action pursuant to 42

---

[2] Plaintiff is a disabled United States veteran, who was honorably discharged from the United States Military. (Doc. 75-25, Ex. 2). The record indicates that the disability was related to service, but does not reveal the precise nature of the disability.

[3] The Amended Complaint was filed on September 9, 2005. Plaintiff filed for a Chapter 13 reorganization in the United States Bankruptcy Court, Middle District of Florida (Case no. 3:05-bk-13294-JAF), on October 13, 2005. Because plaintiff filed under Chapter 13, and not Chapter 7, plaintiff maintained standing to pursue his §§ 1983 and 1985 claims. See Looney v. Hyundai Motor Mfg. Alabama LLC, 330 F. Supp. 2d 1289, 1294 (M.D. Ala. 2004). While it appears the Eleventh Circuit has never directly addressed this issue, the Looney Court notes that the other Circuits to do so have held that a Chapter 13 debtor retains standing to sue. Id.; see Cable v. Ivey Tech State College, 200 F.3d 467, 472-74 (7th Cir. 1999) (there are fundamental differences between Chapter 7 and Chapter 13 in that while Chapter 7 requires the complete liquidation of the debtor's assets (thus requiring control of all assets by the trustee - including lawsuits), Chapter 13 has a different aim in that it encourages the debtor to pay his debts back over time, thus leaving the debtor as a "debtor in possession" pursuant to 11 U.S.C. §§ 1303 & 1306 (i.e., in possession of his own assets with similar powers as a trustee under a Chapter 7 case); Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 515 (2d Cir. 1998) (a Chapter 13 debtor, unlike a Chapter 7 debtor, has standing to litigate causes of action that are not part of a case under Title 11); Maritime Elec. Co., Inc. v. United

U.S.C. §§ 1983 and 1985 against The City of Jacksonville, Jacksonville Sheriff's Office ("JSO") Officer Isaac Brown in his individual capacity and JSO Sergeant Clarence Rodgers in his individual capacity.[4] Plaintiff's allegations arise out of his September 23, 2003 arrest for refusing to sign two Jacksonville Municipal Code ("Municipal Code") citations, which relate to his property located at 5636 Doeboy Street (the "property").

Prior to the arrest, on February 26, 2003, Raynald Lunn ("Lunn"), a Code Enforcement Officer for the City of Jacksonville, wrote a citation to plaintiff for using the property (described as a temporary structure) as a permanent dwelling in violation of Chapter 518 of the Municipal Code. (Doc. 75-3, Lunn Aff.). Plaintiff signed the citation and subsequently, on March 3, 2003, plaintiff filed an Appeal/ Request for Variance from the Requirements of Chapter 518 of the Municipal Code, providing the following reason: "I have a Constitution[al] right to reside on my property. Also dispute the citation for ordinance violation on Constitutional grounds." (Doc. 75-4).

---

Jersey Bank, 959 F.2d 1194, 1209 n. 2 (3d Cir. 1991) ("an essential feature of a Chapter 13 case is that the debtor retains possession of and may use all the property of his estate, including his pre-petition causes of action, pending confirmation of his plan."); see also Fed. R. Bankr. P. 6009. Not only did plaintiff here maintain standing to sue during the pendency of his Chapter 13 bankruptcy case, he remains the proper party plaintiff as his Chapter 13 case was dismissed pursuant to 11 U.S.C. § 1307 on September 20, 2006, and no plan was ever confirmed (Case no. 3:05-bk-13294-JAF, Doc. 23).

[4] The Amended Complaint asserts a conspiracy claim, yet labels that claim as brought under 42 U.S.C. § 1988. Because § 1985, and not § 1988 (jurisdiction and attorneys fees in civil rights cases), applies to civil conspiracies to violate civil rights, the Court understands plaintiff seeks relief under that statute.

On May 23, 2003, Code Enforcement Officer Ronald Lindsey sent a Condemnation Recommendation to Officer Lunn stating that plaintiff was using a utility shed on the property as a residence and that there was no water or electricity in the shed and that the shed had no facilities of any kind. (Id.). On June 6, 2003, Officer Lunn, along with Jacksonville Sheriff's Officer ("JSO") T.E. Hopson, attempted to serve plaintiff a Notice of Order to Vacate the Property. (Doc. 75-3, 6). Plaintiff refused to sign the notice; Officer Lunn posted it on the property. (Id.).

On September 23, 2003, Officers Lunn and Lindsey returned to the property. (Doc. 75-3, 5). They asked permission to enter the property and to look into the utility shed to determine if plaintiff had complied with the previous citation. (Id.). Plaintiff allowed the officers to enter the property, but refused to allow them to look in the utility shed. (Id.). Because plaintiff refused to allow the officers to enter the shed and it otherwise appeared to them that the property was in no different shape than before, the officers determined to issue a Citation for Ordinance Violation to plaintiff for his refusal to comply with a lawful Order of bringing the shed into compliance with Chapter 518 of the Municipal Code. (Id.).

Officer Lunn prepared the citation and presented it to plaintiff for his signature. (Id.). According to the officers, plaintiff refused to sign it. (Id.). Plaintiff, however, maintains that he did not refuse to sign any citation, and submitted affidavits from two individuals, Theresa Hayward and Robert Towns, stating the same. (Doc. 79). Ms.

Hayward and Mr. Towns assert that they were passing by plaintiff's property on September 23, 2003 and saw the officers speaking with plaintiff and that plaintiff never refused to sign any documents. (Doc. 79).[5] Officer Lindsey explained to plaintiff that if he refused to sign the citations he could be arrested, signing the citations was not an admission of guilt and he could challenge the citations in Court if he chose to do so. (Id.).

Officers Lunn and Lindsey requested JSO back-up and Officer Isaac Brown was dispatched to the property. (Doc. 75-27). According to Officer Brown, he attempted to convince plaintiff to sign the citations to avoid arrest, but plaintiff refused. (Id.). Officer Brown radioed his supervisor, Sergeant Clarence Rodgers, for additional back-up. (Id.). Ten minutes later, Sergeant Rodgers arrived at the property and Officer Brown informed him of the situation. (Doc. 75-28). According to the officers, they again attempted to get plaintiff to sign the citations to avoid arrest, but to no avail.

---

5 The City seeks to strike the affidavits of Ms. Hayward and Mr. Towns and for the Court to preclude these witnesses from testifying entirely should this case proceed. (Docs. 77, 81 & 83). The City contends that after Magistrate Judge Morris ordered plaintiff to provide discovery responses (Doc. 64), in part relating to the identity of any witnesses known to have knowledge concerning the events of the case, plaintiff identified Ms. Hayward and Mr. Towns, but provided incorrect addresses and ignored the City's requests to provide correct addresses. (Doc. 79). Further, JSO Deputy Joe Turner submitted a declaration in support of the City's motions detailing his attempts to locate Ms. Hayward and Mr. Towns to serve them subpoenas for deposition; Deputy Turner was and has been unable to locate both individuals. (Doc. 81-2; Doc. 83-2). While the undersigned notes that plaintiff was less than forthcoming in producing the proper contact information for these witnesses, it nevertheless has determined to consider the affidavits.

(Id.).

Officer Brown arrested plaintiff for refusing to sign two lawfully issued citations. (Id.; Doc. 75-27). Officer Brown transported plaintiff to the Duval County Pretrial Detention Facility and prepared the booking report. (Doc. 75-27). Officer Brown noted on the booking report that plaintiff had been arrested for willfully refusing to sign and accept two citations (second degree misdemeanors); however, Officer Brown noted the incorrect statute on the booking report (Fla. Stat. §§ 775.082 & 775.083 - penalty statutes), instead of Fla. Stat. § 162.21(6) (refusal to sign a lawfully issued citation). (Id.).

The following day, September 24, 2003, plaintiff appeared before Duval County Court Judge Russell L. Healy. (Doc. 75-30). Judge Healy provided plaintiff another opportunity to sign the citations. (Id.). Plaintiff refused and pled not guilty. (Id.). Plaintiff also informed the Court that he wished to represent himself in the criminal proceeding and requested to be released on his own recognizance. (Id.). Judge Healy refused to release plaintiff on his own recognizance because of his prior record (not contained in the summary judgment record), set a bond of $15,000.00 and set a pretrial conference date of October 21, 2003 at 1:30 p.m. for plaintiff.[6] (Id.).

Plaintiff never posted bond and remained in prison for twenty-nine days until the October 21, 2003 pretrial conference. (Doc. 75-31). During the pretrial conference,

---

[6] On September 24, 2003, Judge Healy signed a Finding of Probable Cause to Detain stating that pursuant to the Florida Rules of Criminal Procedure (Rule 3.131) there was probable cause to detain plaintiff pending further proceedings.

plaintiff (still representing himself) changed his plea from not guilty to no contest. (Id.). Based on the change of plea, Judge Healy adjudicated plaintiff guilty, sentenced him to time served (twenty-nine days), assessed $128.00 in Court costs and entered judgment.[7] (Id.; Doc. 75-29). The Judgment reflects that plaintiff was adjudicated guilty of only one count of refusing to sign a citation. (Doc. 75-29).

Plaintiff filed this suit on August 6, 2004. (Doc. 1). The Amended Complaint (Doc. 51) contains claims pursuant to 42 U.S.C. §§ 1983 & 1985. Though defendants have filed a motion to dismiss and a motion for summary judgment relating to the claims set forth in the Amended Complaint, the Court will consider the case in a summary judgment posture.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute." Branche v. Airtran Airways, Inc., 342 F.3d

---

[7] On December 2, 2003, when the Judgment originally entered it reflected plaintiff had been adjudicated guilty of refusing to sign a traffic citation (Fla. Stat. § 318.14). The Judgment was later amended on August 26, 2005 to reflect that plaintiff had been adjudicated guilty of refusing to sign a lawfully issued citation; however, the judgment reflected the incorrect statute. On September 3, 2005, the Judgment was amended again to reflect the proper statute (Fla. Stat. § 162.21(6)).

1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986). In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

## III. DISCUSSION

### A. 42 U.S.C. § 1983 Claim

#### 1. Heck v. Humphreys analysis

A threshold issue not raised by either party is the significance of Heck v. Humphreys, 512 U.S. 477 (1994), and its progeny to the undisputed facts in the present case. See Spencer v. Kemna, 523 U.S. 1, 18 (1998) (Souter, J., concurring). Recently, the Eleventh Circuit, in Vickers v. Donahue, 137 Fed. Appx. 285 (11th Cir. 2005) (unpublished opinion), addressed a Heck situation similar to that at bar. In Vickers, plaintiff (Vickers) was ordered to serve a nine month sentence for violation of the provisions of his community control. Id. at 286-87. Plaintiff, proceeding pro se, contended that Florida Department of Corrections Officers filed false probable cause affidavits stating that he had failed to abide by the conditions of his community control. Id. By the time Vickers filed his § 1983 claim, he was no longer in prison and was unable to pursue any habeas claim for this conviction. Id. at 288-89. Prior to

articulating its holding, the Court noted that:

> [w]hile we have not explicitly ruled on whether a plaintiff who has no federal habeas remedy available to him may proceed under § 1983 despite the fact that success on the merits would undermine the validity of, in this case, an order of revocation and the resulting nine month sentence, we decline to do so here because it is unnecessary to the outcome of Vickers' case.

Id. The Court further noted that Vickers was not without an avenue to seek post-revocation relief, as he could have appealed the revocation order, but did not; had he prevailed, a § 1983 claim would not be barred. Id. While the Court declined to decide the case on the ground of the unavailability of habeas relief, it nevertheless relied on Heck, holding that because "Vickers' claim here *would* imply the invalidity of the order of revocation and nine-month sentence he received" without first obtaining a favorable termination (as required under Heck), Vickers' claim was Heck barred. Id. at 289-90. In other words, Vickers' claim was barred because the factual basis for his § 1983 claim "directly undercuts a signed court order" finding that he violated his community control. Id. at 290.[8]

The Eleventh Circuit is not the only Circuit to re-examine Heck post-Spencer. In fact, a Circuit split has developed regarding the application of Heck to situations, such as that in Vickers, where a claimant has been released from incarceration and asserts a § 1983 complaint attacking the very reason he was incarcerated. The Third,

---

[8] While it is true that the Eleventh Circuit's unpublished opinions are not binding authority and that reliance upon them alone is ordinarily disfavored, they are nevertheless persuasive. See 11th Cir. R. 36-2 and I.O.P. 6.

Fifth and Fourth (in an unpublished opinion) Circuits have held, similar to the Eleventh Circuit's unpublished Vickers opinion, that Heck clearly ruled a plaintiff may not attack a conviction in a § 1983 claim even if the plaintiff is not in prison and thus not in custody for federal habeas purposes. See Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005); Randell v. Johnson, 227 F.3d 300 (5th Cir. 2000), cert. denied 523 U.S. 971 (2001); Gibbs v. S.C. Dep't of Prob., 168 F.3d 481 (4th Cir. 1999) (Table) (unpublished opinion). The Ninth and Second Circuits, however, have adopted Justice Souter's position in Spencer that Heck only applies to plaintiffs whose confinement can be challenged in post conviction proceedings. See Nonette v. Small, 316 F.3d 872 (9th Cir. 2002); Jenkins v. Haubert, 179 F.3d 19 (2d Cir. 1999).

In the present case, the gravamen of plaintiff's § 1983 claim is that the JSO Officers (Brown and Rodgers) unlawfully arrested him and caused him to spend twenty-nine days in prison at the Duval County Pretrial Detention Facility based on "false charges." Plaintiff's § 1983 claim attacks the very reason he was arrested and later adjudicated guilty (based on the plea of no contest). Like in Vickers, if plaintiff here is allowed to proceed with his § 1983 claim and prevails, such a result would impliedly render his conviction invalid, which is the precise situation that Heck seeks to preclude. While it appears the Eleventh Circuit would find plaintiff's claim Heck barred, because the City does not raise or rely on Heck, the reach of Heck in these circumstances is not entirely settled in the Eleventh Circuit and plaintiff's § 1983 suit fails for other reasons, the Court declines to decide this case on Heck grounds. The

Court, however, thought it prudent to raise the Heck issue sua sponte due to its potential application to plaintiff's claims at bar.

**2. Qualified immunity**

JSO Officer Isaac Brown and Sergeant Clarence Rodgers are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Officer Brown and Sergeant Rodgers were engaged in a discretionary function, i.e. the arrest of an individual refusing to comply with a lawful order; thus, the burden shifts to the plaintiff to the plaintiff to show that qualified immunity is not appropriate. Id.

A two-part inquiry applies to the issue of qualified immunity as set forth in Saucier v. Katz, 533 U.S. 194, 201 (2001). The first inquiry is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. "If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete. However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal

law." Davis, 451 F.3d at 762 (citing Saucier, 533 U.S. at 201-02) (other citation omitted).

"In the context of a claim of false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause,' that is, where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." Id. at 762-63 (citing Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)) (internal citation and quotation omitted). To determine if "arguable probable cause" exists, courts look at the totality of the circumstances, construing the facts in the light most favorable to the plaintiff. Id.

Here, plaintiff's claim against Officer Brown and Sergeant Rodgers is essentially one for unlawful or false arrest. Plaintiff submits affidavits from Theresa Hayward and Robert Towns in response to defendants' motion for summary judgment which essentially state that they were passing by plaintiff's property and noticed two police officers talking to plaintiff. They assert that they never saw plaintiff refuse to sign any citation. (Doc. 79-2, Hayward Aff.; Doc. 79-3, Towns Aff.). Plaintiff also submitted an affidavit stating that he did not refuse to sign a citation. (Doc. 79-2, plaintiff Aff.).[9] Officer Brown and Sergeant Rodgers, of course, espouse the contrary position that plaintiff was arrested because he repeatedly refused to sign the two

---

[9] During his deposition, however, plaintiff refused to answer whether or not he ever refused to sign any citation. (Doc. 75-34, Ex. 11).

citations in their presence, thus providing probable cause for the arrest.[10] (Doc. 75-27, Brown Aff.; Doc. 75-28, Rodgers Aff.). Code Enforcement Officers Lunn and Lindsey likewise assert that they repeatedly attempted to convince plaintiff to sign the citations to avoid arrest and that Officer Brown and Sergeant Rodgers did the same. (Doc. 75-3, Lunn Aff.; Doc. 75-26, Lindsey Aff.). Further, the citations submitted show that they were never signed. (Doc. 75-3, 6). In other circumstances, these differences in testimony might create a genuine issue of material fact. However, there is another undisputed fact that is decisive.

On October 21, 2003, plaintiff changed his plea to no contest, was adjudicated guilty of the offense of failing to sign a citation and sentenced to time served. (Doc. 75-31, Ex. 8). Plaintiff's adjudication of guilt illustrates as a matter of law that there existed arguable probable cause for the arrest. Thus, because the record illustrates that, at very least, there was arguable probable cause to arrest, plaintiff fails to establish any constitutional violation; Officer Brown and Sergeant Rodgers are entitled to summary judgment on qualified immunity grounds.

**3. <u>City of Jacksonville's direct liability</u>**

Plaintiff's § 1983 claim against the City of Jacksonville for direct liability essentially asserts that: (1) the City fails to adequately discipline, train or otherwise

---

[10] Fla. Stat. § 901.15 provides that an officer may make a warrantless arrest for the commission of a misdemeanor or the violation of a municipal ordinance when such an infraction occurs in the presence of the officer and that such an arrest shall be made immediately or in fresh pursuit.

direct its police officers and (2) there is a custom or policy within the JSO to disregard Miranda rights.[11] To impose § 1983 liability on a municipality, a plaintiff must show: "1) that his constitutional rights were violated; 2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and 3) that the policy or custom caused the violation." McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)). Constitutional policies can become unconstitutionally applied through a repeated failure to train. City of Canton, 489 U.S. at 387. Recognizing that a municipality such as the City of Jacksonville will not likely have an express written or oral policy of inadequately training or supervising its employees, plaintiff may prove a "policy" by showing that the City's failure to train amounts to a "deliberate indifference" to the rights of its citizens. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing City of Canton, 489 U.S. at 388-89). "To establish a 'deliberate or conscious choice' or such 'deliberate indifference,' a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Id. (citations omitted).

Here, not only has plaintiff failed to establish a cognizable constitutional

[11] This portion of plaintiff's § 1983 claim also asserts that the "policies, custom [and] practices" include that the "officers violated chapter 901.15 of the Florida Statutes." It appears that plaintiff complains specifically about the Officers arresting him in this case, not that there is a custom or policy within the JSO to disregard this law. As such, this issue has been addressed in section III.A.2, which addresses the individual officers' qualified immunity.

deprivation, he has likewise failed to establish: 1) any evidence of a custom or policy within the JSO to inadequately train or supervise their officers or 2) that in the absence of any such express policy, there exists the required "deliberate indifference" on the part of the City of Jacksonville as to such training or supervision. Plaintiff also fails to offer proof of any custom or policy involving JSO Officers disregarding Miranda warnings. Thus, the City of Jacksonville is due to be granted summary judgment on plaintiff's § 1983 claim.

**B. Conspiracy to Interfere with Civil Rights - 42 U.S.C. § 1985(3)**

In the Amended Complaint, plaintiff asserts that the defendants have conspired to violate his civil rights. "The elements of a cause of action under 42 U.S.C. § 1985(3) are: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Trawinski v. United Technologies, 313 F.3d 1295, 1299 (11th Cir. 2002) (citation omitted).

The City asserts that plaintiff has failed to procure any facts to establish this claim and that, even if plaintiff has done so, the intracorporate conspiracy doctrine applies. While it is entirely possible that the City is correct on both counts, the Court need not reach the intracorporate conspiracy doctrine because plaintiff has failed to set forth any facts whatsoever to establish this claim.

### C. State Law Claims

In its motion for summary judgment, the City addresses certain state law claims for negligent training and negligent supervision it apparently believes plaintiff has asserted in his Amended Complaint. The undersigned's review of the Amended Complaint shows that plaintiff has asserted those theories in the context of a § 1983 claim and does not assert separate state law claims; it is unnecessary to address any such claims.

## IV. CONCLUSION

For the foregoing reasons, the City of Jacksonville, Sergeant Clarence Rodgers and Officer Isaac Brown are entitled to summary judgment. Accordingly, it is hereby **ORDERED**:

1. Defendants City of Jacksonville, Sergeant Clarence Rodgers and Officer Isaac Brown's Motion for Summary Judgment (Doc. 75) is **GRANTED**.

2. Defendants City of Jacksonville, Sergeant Clarence Rodgers and Officer Isaac Brown's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 61) is **MOOT** based on the Court's ruling on the motion for summary judgment.

3. All remaining motions (Docs. 67, 69, 77, 81, 83 and 92) are **DENIED AS MOOT**.

4. The Court notes that the City originally filed a counterclaim against plaintiff pursuant to Fla. Stat. § 960.293(2), which provides that a convicted offender (provided the conviction is for an offense other than a capital or life felony) is liable to

the state and its local subdivision for a liquidated damage amount of $50.00 per day for the duration of his sentence. However, that counterclaim was directed at the original complaint filed in this case. The operative complaint now is the Amended Complaint (Doc. 51). An amended complaint supersedes the original complaint; the only issues before the Court are those raised in the context of it. Fritz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982); Smith v. Polk Cty., Fla., 2005 WL 2129189, *1 (M.D. Fla. 2005). Here, the City never had the opportunity to answer the amended complaint as the motion to dismiss was still pending when the Court determined to rule on this case in a summary judgment posture. Even assuming the City's counterclaim, which is based solely on state law, is still viable in this case, the Court declines to retain jurisdiction to consider it.

5. The Clerk is Ordered to enter judgment in favor of the City of Jacksonville, Sergeant Clarence Rodgers and Officer Isaac Brown and against the plaintiff. The Clerk is further Ordered to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this 26th day of September, 2006.

TIMOTHY J. CORRIGAN
United States District Judge

t
Copies: counsel of record and pro se party